Opinion of the Court.
Kirkpatrick C. J.
This is a motion to quash a certiorari directed to the Orphans’ Court of the county of Essex, because it was allowed by a judge, at chambers in vacation, and not on motion at bar, on special ground.
*This question has been before the court at sundry times in one form and another, and I thought had been pretty satisfactorily settled. I have again, however, looked into it with a view to this particular case.
The jurisdiction of this court is very high and transcendant. (a) Among other things, it has the superintendance of all inferior courts, both civil and criminal, of all corporations in the exercise of their corporate powers, and of all public commissioners in the execution of their special authorities and public trusts. It causes their proceedings to be certified before it, in order that upon inspection they may be stayed, affirmed, or set aside, as the case may require; and that in many cases before, as well as after judgment. The writ of certiorari, issued for this purpose, is of itself a supercedeas which stays all further proceeding in those inferior courts. (b) The very issu *447 ing of such writ therefore, is the exercise of a high judicial power, and must, in its nature be discretionary. To allow every man, in the waywardness of his own mind, to sue out a writ of certiorari, in every stage of a suit, and thereby to impede the administration of public justice and the execution of public powers and authorities, would be an evil -which could not be borne. It may rationally be concluded therefore, that from the earliest times, application was always made for this writ to the discretion of the court, and that, in most cases upon special grounds. All the cases that I can find, go upon this principle ; the universal practice of the court, has been in accordance with it. When the certiorari is said to be a writ of right, a writ of course, or ex debito justicia}, as it frequently is in the books, it is not to be understood that it is therefore to be sued out ab libitum, without the allowance of the court. In the case of the king, for instance, it is said to be a uirit of right, a writ of course, &c. and yet we find the king’s officer uniformly moving the court for the allowance, and in no case taking out the writ without it. All that is meant, therefore, by its being a writ of right, &c., is that the court are bound to grant it upon application, without special ground. Yet still it is their act, and in all cases, as well of the king as of the subject, it must be obtained by an application, either to the court at bar, or to a judge at chambers.
I say to a judge at chambers, because it is manifest that even at the common law, before the statute 1 and 2 Wm. & M. the judges entertained these applications, and granted their rules or *fiais at chambers, in vacation, as well as at bar in term time. What is said by Holt in Reg. v. Knatchbull. 1 Salk. 150, and in Lil. Reg. 365. Bac. Abr. Certiorari E, and 2 Hawk. 410, establish this doctrine beyond a doubt. In all these places, the Jiasi at chambers before the statute, and the signing of the writ under the statute, are spoken of as different things; the one as usual and in common practice to remove all orders, &c., and the other necessary only in the particular cases required by the statute itself. Upon the application at chambers too, the judges frequently allowed the writ upon terms, and took the recognizance of the party for *448 the performance of such terms; and even after the statutes the issuing of these writs, such recognizance taken as at the common law, and for the performance of conditions not required by these statutes, were held to be g00(j and valid, because the provisions of the statutes were only cumulative and in affirmation of the common law. Hawk. 214. The ancient practice, therefore, as to the allowance at chambers, I think cannot be doubted.
The 1 & 2 of P. &. M. which is the first statute which I find upon this subject, seems to be principally directed against an abuse which had been practised by some, in suing out these writs without the authority of the court at all. It therefore directs, that in certain cases, “ they shall be signed by the proper hand of the chief justice, or in his absence, by one of the justices of the court out of which it shall be awarded, under the penalty of five pounds upon him that writeth it.” It neither enlarges or restrains the ancient authority of the court, but in order to avoid impositions, it requires the actual signature of the judge, and subjects the prosecutor to a penalty if he shall take out the writ without such signature. And though from the words of 'the statute, we should be led to think that it contemplated the suing out of the writ at the bar only, yet it was so construed as not only to apply to the chamber practice, but also to confirm and establish it, and is probably the foundation of the allocatur, in its present form, now usually endorsed on the writ. I say the allocatur in its present form, because I apprehend the fiat granted at the common law, before the statute, was a different thing. It was an order obtained from the judge, and filed in the court from which the writ issued as a warrant for issuing the same.
The 5 & 6 of IP. & M., with respect to the removal of indict*ments, presentments, &c. before trial, not only recognises, but expressly establishes this chamber-practice, requiring too, that the judge at chambers shall endorse the allowance on the writ. This statute, however, does not appear to have been in force in this country; at least I have, no knowledge of any practice under it.
But notwithstanding this common-law practice, thus recognised and established, I cannot perceive that this *449 has been the course of the King’s Bench in later days. Every hook that I open shews me applications for writ to the court at bar; they shew me applications in behalf of the king as well as of the subject, and in almost every supposablc case. I am inclined to think, therefore, that the allowance at chambers is pretty much discontinued, unless in the particular cases specified in the statutes. We find in the case of Rex v. Eaton. 2 Durn. & East. 89, which was an application for a certiorari to remove a conviction on the act to prevent stealing deer, the counsel for the defendant affirms that it had always been the practice to grant a certiorari of course, upon the application of either party. But Justice Butter, at another day, v]>on further inquiry into the cases, said, “that the practice had not been as the counsel had suggested;’’ that the rule requiring the defendant to “ lay a ground before the court for granting a certiorari, had obtained ever since the lime of Charles II; that it was then settled as clear law, that a certiorari ought not to be granted in vacation, but in open court only, and upon ground shewn.” This is laid down in broad terms, and confined to no particular case.
But however the law may have been settled upon this point in England, it is pretty clear that our ancestors brought over with them, the ancient practice as it was now modeled and confirmed by the 1st and 2nd P. and if.; and that the justices of this court have at all times, entertained these applications at chambers and granted their allocators there, and that in all cases.
The first case, so far as I know, in which the authority of the judge at chambers was brought into question, was the case of the public election for fixing the place of the court-house in Middlesex county. Here the Chief Justice Kinsey, if my recollection is right, endorsed an allocatur in vacation, but upon full consideration, upon his own suggestion, that writ was quashed upon *its return, and a new one ordered at bar, on cause shewn. Since that time, it has uniformly been holden/that in superintending inferior jurisdictions in the execution of public powers and authorities in which the people at large are concerned, the writ of certiorari can be granted at bar only, and *450 that upon good cause shewn. Of this kind of jurisdicare all tribunals established by law for the execution 0f particular public trusts; such as boards of freeholders, boards of assessors, townships and township committees, commissioners appointed to lay out roads, turnpikes, &c. and all corporations of every kind in the execution of their corporate function ; in short, all tribunals which are called extraordinary and special in contradistinction to the ordinary and common courts, established for the trial of criminal offences, and the determination of private rights between citizen and citizen.
The staying or superceding the proceedings of these public functionaries in the execution of their trusts, might, in many cases, and indeed must, in most cases, be attended with great public inconvenience and loss ; and therefore we have required not only that special ground be suggested, but that sufficient ground be fully made out by affidavit, or otherwise satisfactorily at the bar of the court, before we .will interpose its high superintending power by issuing this writ.
But with respect to the ordinary tribunals, whether civil or criminal, the certiorari being merely in the nature of a writ of error to remove judgments in matters touching the private rights of individuals only, it has always been the custom, and without public inconvenience, may continue to be the custom, for a single judge at chambers to allow such writ, and that without special cause shewn. In most cases indeed, the late statute has prescribed the terms upon which such allowance shall be granted, and by whom it shall be granted, and in these, of course, there can be no doubt. The case of the Orphans’ Court, however, which is the one before us, is not included in the statute, but is left as it was at the common law. Upon the general principle which I have laid down therefore, the Orphans’ Court being an ordinary jurisdiction for the determination of private rights between individuals, the allowance at chambers, according to the ancient practice of the judges at the common law, both in England and here, is a good allowance.
Therefore let the party take nothing by his motion.
*451 *SoiTTHAKt> J.
This certiorari was directed to the Orphans’ ( hurt of the county of Essex, to remove settlement of the executors account, and was authorised, by an allocatur of a judge at his chambers; no previous application therefor having been made at the bar of this court. It is objected, that the writ issued improvidently ; it being one of those cases in which it can only issue, after motion in open court.
So far as T am informed, this is res integra. It does not seem to have been solemnly adjudged, and whatever may have been the practice, it alone, unsupported by the statute and the books, will not establish the law. In the case in Pen. 507, the question was stirred, but the court purposely avoid expressing any opinion upon it.
Two inquiries naturally present themselves. 1. How did this matter stand before the passing of the statute in Pat. 63? And 2. Did that statute make any alteration?
The superintending power vested in this court is certainly very high ; it can direct the proceedings of all inferior courts, civil and criminal within the state, to be certified before it, in order to see that they have been in conformity to the law of the land. This power it exercises, in some cases, by the principles of the common law, and in others, by express statutory provisions. In some instances, the issuing of its writs of certiorari, is so ordered and directed, as to be matter of course; leaving no discretion to be exercised; and judges at their chambers, are permitted, or commanded to grant the allocatur; in others it is subject to a just discretion, and must be allowed at bar. The circumstances which distinguish and determine the mode of its allowance, are to be found in the character of the court or tribunal, to which it is directed, and the subject matter of the proceedings or judgment to be removed ; but principally the former. To the courts of ordinary common law jurisdiction, and to which the King’s Bench directed its writs of certiorari, the writ sometimes goes as matter of course ; but this is never done to those extraordinary jurisdictions, which do not proceed by the course of the common law, and to which the King’s Bench did not direct these writs. To such tribunals, they should not, by every principle of *452 propriety and practice, except upon advisement and a case made. Apply this to the subject before us. The Orphans’ Court, is not one of the ordinary common law courts, *to which, the King’s Bench in England, would have directed its certiorari. It comes in the place of their ecclesiastical courts; and though it is vested, by statute, with some powers which they did not enjoy; (as dividing lands, &c.) yet it is essentially one of those courts, and the King’s Bench upon this subject matter now sought to be reviewed, would not have directed its certiorari to them ; nor would this court, if the liberty to do so, had not been granted by statute. This then, is one of those extraordinary cases, in which the writ does not issue as matter of course, unless so directed and prescribed by the statute: and if the statute do not provide this remedy, in such way as to take from the court, all power of refusal, we ought to require a proper case and exercise a legal discretion before it is issued. What then is the statute ? It says, “ All final sentences or decrees of the Orphans’ Court, where no appeal is given to the Prerogative Court, shall be subject to removal by certiorari, into the Supreme Court; provided always, that such certiorari be applied for, by either of the parties to the suit, within three months after.”
I apprehend that too strong a construction has been given to the words, “shall be subject to removal,” found in this section. They have been considered by the counsel, as imperative ; leaving no exception ; permitting no discretion. Had the legislature intended this, it would have said, that the court shall, on application in all cases, grant the writ; but it could not have intended it. There are many cases, where the granting of the writ, would operate manifest injustice and oppression; and where no possible purpose could be effected to either party, but the delay arid the gratification of malevolence. The makers of the law did not design such gratification; they must have meant to leave a just and legal discretion in the court, that the writ might be granted, only where law and justice would be promoted by it. And the words to my mind convey this idea : “Shall be subject to removal,” is *453 nothing more than declaring, that the court may grant, when it sees proper, (a)
If the idea before suggested, that the Orphans’ Court is not one to which the writ could issue on common law principles, be correct: 'then, in order to the exercise of this power, by this court, this provision in our statute was absolutely necessary. Without it, no writ, in any form of allowance, could issue ; and I apprehend that the object was, merely to give the power, without intending *to regulate its exercise: such I take to be the true construction of the words in this section. No inference unfavourable to this view of the subject, can be drawn from the proviso. That does not render the requirement to issue the writ, more positive; it merely limits the period, within which, the power and the discretion of the court may be exercised. In no case, however strong, can the writ issue, unless applied for, in three months, after the final decree.
Is this power and discretion then, under such circumstances, to be exercised by a single judge, at his chambers, or by the court at bar ? I can find no case under our laws and our rules of practice and proceeding, of an allocatur, by a single justice, where the writ is either directed to a court, not of ordinary common law jurisdiction, and to which the King’s Bench did not direct the writ; or where the issuing of it becomes matter of argument and discretion. In such cases, the court always first hear the grounds on which the application rests. Nothing prevents this course, but the absolute requirement of the statute, that the writ shall issue : there it is not only permitted, but the court have no power to refuse it.
This position is not impugned by the fact, that a single justice, at his chambers, may grant the writ directed to the court for the trial of small causes. Why may he do this ? That is a court to which the writ, would issue, on strict common law principles; and besides, it matters not whether, as has been ably insisted at the bar, a single justice could exercise this right, before the *454 passage of our several acts on this subject; those acts, create or recognise the right, and direct the mode jn which it shall be administered; and if the requirements of the law are complied with, the justice has no power to refuse his allocatur. The case under consideration, bears a very different complexion. Here are no terms prescribed ; here is no command given ; here is no single justice, mentioned and vested with the power.
The instance cited from Pat. 350, to prove that the legislature always point out the motion at bar, where it is designed, proves too much. That statute also points out the mode of application to a single justice, in the same cases. Now the argument is quite as fair, when we infer that no application can be made to a single justice, at his chambers, because this act proves *that where the legislature meant such application should be made, it always says so expressly. The object of that act, shews why the mode of application is pointed out. Jurisdiction over certain offences, had before been given to the justices and sessions. Here the legislature prescribes, not merely that their proceedings may be reviewed, but that the trial of those offences may be removed from them. It was not only proper but necessary, to point out the mode of that removal.
The distinction insisted on, that applications at bar are necessary where the writ issues at common law, but not where directed by statute, is not accurately drawn. This is perhaps the case, where the statute positively requires it to issue, and prescribes the conditions: but not where it merely grants the writ, and permits it to issue under the discretion of the court. In the latter case, the mode of authorising it is left precisely as at common law.
It would certainly be cause 'of regret, that a decision on this question should, in some instances, place the citizen out of the reach of this remedy, as from the times of holding the different courts, it may so happen that this court will not sit within three months after a final decree may be rendered. But as the evil results from the statute not being sufficiently guarded, so the relief is plain; an extension of the time for one, two, or three months.
*455 I think the writ issued improvidently, and ought to be quashed.
Motion refused.

 State vs. Justices, &c., Coxe 247 et seq. Tucker vs. Freeholders, &c., Sax. 287. Whitehead vs. Gray, 7 Hal. 38. State vs. Woodward, 4 Hal. 22. State vs. Coleman, 1 Gr. 102. State vs. Falkinburge, 3 Gr. 322. N. J. R. R. vs. Suydam, 2 Har. 62. Camden vs. Mulford, 2 Dutch. 53. State vs. Jersey City, 5 Dutch. 175. State vs. Amboy, 5 Dutch. 260. State, Winsor vs. Brown, 2 Vr. 357. Hoagland vs. Delaware, 2 C. E. Gr. 114. State vs. Parkhurst, 4 Hal. 427.

 Kingsland vs. Gould, 1 Hal. 161. Mairs vs. Sparks, 2 South. 516. Allen vs. Hopper, 4 Zab. 514. McWilliams vs. King, 3 Vr. 21.

 See Woodhull vs. Neafie, 1 Gr. Ch. 409. Seiple vs. Borough of Elizabeth, 3 Dutch. 407. Reed vs. Bainbridge, ante 358.